UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC WRIGHT | : | Civil Action No: 1:02cv00508 |
|       Plaintiff | : | |
| | : | REPLY IN SUPPORT OF MOTION |
| -v- | : | FOR SUMMARY JUDGMENT OF |
| | : | DEFENDANT HOBSONS, INC. |
| HOBSONS INC. | : | |
|       Defendant | : | |

## I. FACTS

Plaintiff's performance in the first four months of the fiscal year ending 2002, October 2001 to January 2002, fell below the expectations of both Plaintiff Eric Wright and Defendant Hobsons, Inc.[1] As of his termination on February 1, 2002, the uncontested evidence reveals that Plaintiff had the lowest percentage of sales target, as well as the lowest actual sales, of the similarly situated white account managers on the Core Product Sales Team[2]. (Contra Dep. Ex. 3.)

| Account Manager | Actual Sales | Target | % of Target Achieved |
|---|---|---|---|
| Plaintiff | $236,544 | $625,000 | 38% |
| Matthew R. Hanisian | 292,685 | 320,000 | 91% |
| Darin L. Surrey | 318,587 | 330,000 | 97% |
| Chris D. Zahumensky | 541,792 | 485,000 | 112% |

---

[1] The evidence is uncontested that Plaintiff's self-imposed goal for the Northeast territory in the fiscal year ending 2002 was $1,520,000, (Wright Dep. Ex. 19), prior to that goal being lowered to $1,395,000 by Plaintiff's sales manager, Benjamin Contra, Jr. (Affidavit of Winhusen, para. 5.)

[2] As set forth below, the similarly situated white account managers who were members of the Core Product Sales Team as of February 1, 2002 were Matthew R. Hanisian, Darin L. Surrey and Chris D. Zahumensky.

Plaintiff's performance fares even worse when compared to his performance in the first four months of the prior fiscal year ending 2001. (Contra Dep. Exs. 2, 3.)

| Plaintiff | Actual Sales | Target | % of Target Achieved |
|---|---|---|---|
| January 31, 2001 | $499,440 | $345,000 | 145% |
| January 31, 2002 | 236,544 | 625,000 | 38% |

Plaintiff was terminated based upon this poor performance.

Plaintiff devotes a large portion of his Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Memorandum in Opposition") to a discussion of the excellence of his performance in the fiscal year ending 2001. This discussion may be relevant to understanding the high expectations of both Plaintiff and Hobsons for Plaintiff's performance the following fiscal year[3]; however, this discussion is irrelevant to Plaintiff's actual performance. Plaintiff's performance in the first four months of the fiscal year ending 2002 was poor when compared to the performance of similarly situated white account managers, when compared to his prior year's performance, when compared to the expectations of both Plaintiff and Hobsons, and when compared to the expectations of the "richest and largest territory in the U.S."

---

[3]Both Plaintiff and Hobsons' expectations for Plaintiff in the fiscal year ending 2002 were also based upon their recognition that the Northeast territory covered by Plaintiff was "the richest and largest territory in the U.S." (Contra Dep. Ex. 10.) Plaintiff himself testified that his territory had the largest number of colleges in it, (Wright Dep. 121:11-13), the largest renewal base in the company, (Wright Dep. 121:14-17), and that it had more possible clients than any other territory. (Wright Dep. 156:13-20.) Plaintiff acknowledges that "Hobsons may have been justified in expecting better results from Wright given his experience and territory, ...." (Memorandum in Opposition, p. 14.)

II.  ARGUMENT

**A.  Plaintiff Cannot Establish His *Prima Facie* Case of Race Discrimination Pursuant to Title VII.**

"To prevail in an employment discrimination claim brought pursuant to Title VII, a plaintiff must either provide direct evidence of discrimination, or establish a *prima facie* case pursuant to the burden shifting paradigm set forth in *McDonnell Douglas Corp. v. Green*."  Howard v. Board of Education of the Memphis City Schools, 2003 WL 21518725*6 (6th Cir. July 1, 2003) (a copy is attached to Hobsons' Motion for Summary Judgment).  A plaintiff may also establish a *prima facie* case with statistical evidence.  Brune v. BASF Corporation, 41 F.Supp.2d 768, 772 (S.D. Ohio, W.D. 1999), rev'd on other grounds, 234 F.3d 1267, 2000 WL 1597908 (6th Cir. 2000).  Plaintiff has provided no evidence to establish his *prima facie* case utilizing any one of these methods.

**1.  Plaintiff can offer no direct evidence of race discrimination so as to establish his *prima facie* case.**

Plaintiff fails to challenge Hobsons' assertion in its Motion for Summary Judgment that Plaintiff can offer no direct evidence of race discrimination.  (Motion for Summary Judgment, pp. 9-10.)  As set forth in the Motion for Summary Judgment, not a single employee of Hobsons deposed by Plaintiff could testify to having heard any derogatory remarks regarding Plaintiff or his race from Contra or any other employee of Hobsons.  (Motion for Summary Judgment, p. 9.)  Further, Plaintiff himself never made a complaint to anyone at Hobsons that he had been subjected to discriminatory treatment.  He did not even lodge such a complaint at the exit interview following his termination.  (Wright Dep. 118; Winhusen Dep. 20.)  Plaintiff's inability to offer direct evidence of race discrimination also prevents Plaintiff from proceeding under a "mixed motives" analysis.  Mumaw v. Dollar General Corporation, 19 F.Supp.2d 786, 790 (S.D. Ohio, W.D. 1998).

**2. Plaintiff cannot meet the standard necessary to establish his *prima facie* case with statistical evidence.**

Plaintiff alleges that "statistical evidence shows that Hobsons held a bias against African-Americans; ...." (Memorandum in Opposition, p. 1.) In support of this allegation, Plaintiff asserts only that "Wright was the first Black salesperson ever hired by Hobsons"[4] and that "[i]n all, only 3 or 4 of the more than 50 employees of Hobsons were Black during the two years Wright was employed there." (Memorandum in Opposition, p. 2.) Contrary to Plaintiff's allegations, these facts, even if true, do not provide sufficient statistical analysis to establish a *prima facie* case of racial discrimination.

In Brune, 41 F.Supp.2d at 773, the Judge in this case held with respect to the use of statistical evidence: "Even assuming the Court found the small statistical pool to be probative, the evidence still does not give rise to an inference of discrimination. To establish discriminatory intent with statistical evidence, and in the absence of other direct or circumstantial evidence of discrimination, the statistical evidence must show significant disparity and eliminate the most common nondiscriminatory explanations for the disparity." Similarly, in Brown v. EG&G Mound Applied Technologies, Inc., 117 F.Supp.2d 671, 679 (S.D. Ohio, W.D. 2000), another Judge of this Court held with respect to statistical evidence as follows:

> Furthermore, even if the sample size were sufficient, the statistics are inconclusive at best. The total percentage of minorities working for Defendant is 13%. Plaintiff has not articulated to the Court the significance of any of the statistics presented. Plaintiff has failed to present to the Court any analysis of these numbers demonstrating how they establish evidence of discrimination. In particular, Plaintiff has failed to demonstrate what statistics would be expected for an employer of

---

[4] Plaintiff ignores the testimony of Karen Gunnels, an African-American employee since 1994 and current Director of Creative Services, that she had been in sales between 1994 and 1997. (Gunnels Dep. 15-16.)

>Defendant's size. Instead, Plaintiff relies on the Court to determine the significance of the numbers presented to it. For all of the claims presented, Plaintiff has failed to present evidence of any methodology used in her analysis. Plaintiff has only provided a 'snapshot' of Defendant's demographics. While this might be more persuasive if the statistics were more egregious, it is insufficient to carry Plaintiff's burden of production.

Plaintiff in the case at bar fails to present any analysis, much less evidence of any methodology used in his analysis, or to eliminate the most common nondiscriminatory reasons for the statistics that he cites. Plaintiff also fails to demonstrate what hiring statistics would be expected of a firm similar in size, business and location to Hobsons. Plaintiff's "snapshot" of Hobsons' demographics is insufficient to carry Plaintiff's burden of production.

### 3. Plaintiff cannot establish his *prima facie* case with indirect evidence.

Plaintiff cannot establish his *prima facie* case by indirect evidence as he cannot meet the fourth prong of his *prima facie* case, which requires that he establish either that he was replaced by a person outside the class or that a "comparable non-protected person was treated better." Mitchell, 964 F.2d at 582. Further, Plaintiff cannot provide the additional evidence necessary to establish a *prima facie* case in a reduction in force situation.

"In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.' The nonmoving party 'must set forth specific facts showing there is a genuine issue for trial.' Fed.R.Civ.P. 56(e)." Brune, 41 F.Supp.2d at 770.

#### a) Plaintiff can offer no evidence that he was replaced by Joseph Payne.

Plaintiff summarily concludes that he was replaced by Joseph Payne. (Memorandum in Opposition, p. 13.) Plaintiff fails to cite to any evidence whatsoever in support of this argument or

to contradict the evidence identified by Hobsons, which reflects that no such replacement occurred. Neither the evidence nor the case law defining "replacement" support Plaintiff's summary conclusion.

The uncontested evidence set forth in Hobsons' Motion for Summary Judgment reveals that prior to Plaintiff's termination on February 1, 2002, Payne had primary responsibility for the Latin American market selling Hobsons' products to corporations as opposed to universities. (Contra Dep. 137.) Additionally, Payne had responsibility for covering the university market on the West Coast of the United States. (Contra Dep. 140:6-9.) Subsequent to Plaintiff's termination, Payne picked up additional states on the West Coast. (Contra Dep. 139:2-5.) Contrary to Plaintiff's allegation, unsupported by any evidence in the record, that "Payne ceased to have any of his responsibilities for Latin America," the evidence in the record reveals that Payne continued to retain some responsibilities for the Latin American market. (Contra Dep. 142:14-18; Payne Dep. 15:9-14.)

The Judge in this case held in Brune, supra, that "a terminated employee is not replaced when 'another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.'" (Citation omitted.) 41 F.Supp.2d at 768. In the case at bar, the result of Plaintiff's termination was to increase the number of West Coast states covered by Payne in addition to his existing duties on the West Coast and his continuing responsibility for the Latin American market. Plaintiff has failed to offer any affirmative evidence to contradict the evidence proffered by Hobsons; therefore, Plaintiff's claim that he was replaced by Payne must fail as a matter of law.

### b) The evidence does not reveal that a comparable, non-protected person was treated better.

Plaintiff argues that he received "harsher treatment on account of his race." (Memorandum in Opposition, p. 13.) In order to prevail on this argument, Plaintiff must offer evidence that the individuals to whom Plaintiff compares his treatment were similarly situated in "all relevant aspects." Ercegovich v. Goodyear Tire & Rubber Company, 154 F.3d 344, 353 (6th Cir. 1998).

Contrary to Plaintiff's misrepresentation that "Hobsons argues that Wright cannot as a matter of law compare himself to the white salespersons at Hobsons," (Memorandum in Opposition, p. 14), Hobsons asserts only that Payne was not similarly situated to Plaintiff in "all relevant respects." (Motion for Summary Judgment, pp. 16-17.)

The uncontested evidence in the record reveals that during the first four months of fiscal year 2002 Payne's employment differed from Plaintiff's in almost every aspect. At the time of Plaintiff's termination, Payne was acting as Sales Director for the Latin American market in which role he was supervising at least two other employees. (Payne Dep. 11-12.) Plaintiff alleges that Payne was similarly situated because "Contra expected Payne to supervise his assistants and make his sales targets." (Memorandum in Opposition, p. 15.) Plaintiff fails, however, to support this allegation with any evidence in the record. In Adams v. Heilig-Meyers Furniture Co., 97 F.3d 1451, 1996 WL 518065*3 (6th Cir. 1996) (a copy is attached to Hobsons' Motion for Summary Judgment), the Sixth Circuit held that "Plaintiff overlooks the fact that he and [the store manager] are not similarly situated because they are not employed in the same capacity. Church is a manager and plaintiff was a salesperson. As the district court noted, 'a manager may be more valuable to the defendant than a salesperson.'"

The evidence in the record further reveals that Payne was not a member of the Core Product Sales Team, (Contra Dep. 141:19), and that Payne sold to the Latin American market wherein Payne called on corporations as opposed to universities. (Contra Dep. 137.) As Plaintiff offers no affirmative evidence to contradict the fact that Payne was not similarly situated to Plaintiff in these relevant aspects, Plaintiff cannot establish that any alleged "harsher treatment" meets the requirements necessary to establish the fourth prong of his *prima facie* case.

With respect to the three white account managers who were similarly situated to Plaintiff, Hanisian[5], Surrey, and Zahumensky, Plaintiff alleges that he "outperformed" them and that they "were never disciplined, warned or terminated for ... sales performance that was worse than Wright's." (Memorandum in Opposition, p. 1.) This claim is simply not supported by the evidence in the record, which reveals that as of January 31, 2002, Plaintiff had the lowest percent of sales goals met, as well as the lowest actual sales of the members of the Core Product Sales Team. (Contra Dep. Ex. 3.)

Plaintiff's argument that the similarly situated account managers Hanisian and Surrey experienced subsequent "slumps" similar to Plaintiff's is not supported by the evidence in the record. Plaintiff alleges that Account Manager Hanisian "began a three month slump – from February through April 2002 – where he sold only $92, 437 of product representing 27% of his sales total. (Exhibit 2)" Plaintiff also alleges that in "February and March of 2002, [Account Manager] Surrey experienced a two month slump where he sold only $82,239 representing just 36% of his sales target.

---

[5]Hanisian was not similarly situated to Plaintiff in all relevant respects in that Plaintiff had been part of the Core Product Sales Team since his employment began in January 2000 while Hanisian did not join the Team until the beginning of the fiscal year ending 2002. Prior to that, Hanisian sold the Christian College Guide nationally. (Hanisian Dep. 7, 9-11.)

(Exhibit 2)." (Memorandum in Opposition, p. 8.)  The exhibit relied upon by Plaintiff, the Sales League Reports for the period between October 2001 and September 2002, reveals that as of April 30, 2002, Hanisian had sold $424,607 or 62% of his sales target.  The exhibit reveals that Surrey had sold $373,957 or 86% of his sales target by February 28, 2002 and that he had sold $403,826 or 71% of his sales target by March 31, 2002.  The evidence does not reflect the subsequent "slumps" alleged by Plaintiff.

In any event, the period at issue was October 2001 to January 2002, the first four months of the fiscal year ending 2002.  In Irwin v. Marquette Systems, Inc., 107 F.Supp.2d 974, 986 (S.D. Ohio, W.D. 2000), the plaintiff argued that the sales people who took over his territory had previously had performance problems.  The court concluded "that the relevant time period for the comparison of the performances of Plaintiff and his co-workers is the Spring of 1997, the time during which the employees faced possible termination due to the reduction in force.  At that time, the unrebutted evidence demonstrates that the sales figures of Mr. Murray, Mr. Hallstrom, and Mr. Roytek helped the sales region Plaintiff was a part of become the number one sales region in the country for Defendant.  Plaintiff lagged behind in his region, reaching only 46.1 percent of his sales forecast.  Thus, Plaintiff fails to raise genuine issues of material fact indicating that he possessed qualifications superior to those of Mr. Murray, Mr. Hallstrom, or Mr. Roytek."

The evidence in the record, when correctly cited, reveals that the white account managers similarly situated to Plaintiff did not suffer the same performance deficiencies as Plaintiff during October through January of the fiscal year ending 2002, a period to which Plaintiff refers as "the

most attractive selling months."[6] (Memorandum in Opposition, p. 4.) Further, these alleged "slumps" did not continue for four months as did Plaintiff's.

Plaintiff then appears to allege that the percentage increase in his sales target for the fiscal year ending 2002 from his actual sales in the fiscal year ending 2001 reflects harsher treatment. In support of this allegation, Plaintiff repeatedly complains about his sales target for 2002 "representing a 57% increase above his FY2001 actual sales." Plaintiff fails to challenge the evidence that this increase was no greater than the increases expected of the similarly situated white account managers. The uncontested evidence reveals the following expected percent increases for 2002 over actual sales in 2001:

| Account Manager | 2002 Sales Target | % Increase Over 2001 Actual Sales |
| --- | --- | --- |
| Plaintiff | $1,395,000 | 57% |
| Hanisian | 750,000 | 73% |
| Surrey | 1,000,000 | 121% |
| Zahumensky | 1,300,000 | 54% |

(Affidavit of Winhusen, para. 5.) The expectation of a 57% increase for Plaintiff is simply not evidence of "harsher treatment" much less "harsher treatment on account of his race."

Further, Plaintiff's argument that the expected increase in his sales target evidences discrimination is belied by the uncontested evidence that Plaintiff himself had proposed as a sales

---

[6]Apparently, the similarly situated account managers did not succumb to the disruption caused by the September 11, 2001 attacks of which disruption Plaintiff wishes the Court to take judicial note. (Memorandum in Opposition, p. 6.) In fact, this is the first time that Plaintiff has asserted the attacks of September 11, 2001 as the reason for his poor performance. Plaintiff does not allege that he asserted this excuse at any meetings with Contra regarding the need for Plaintiff to improve his performance or at Plaintiff's exit interview following his termination. Further, Plaintiff provides no evidence in any form acceptable under Fed.R.Civ.P. 56(c) to support his claim that his poor performance was a result of the September 11, 2001 attacks.

target for 2002 in the amount of $1,520,000, (Wright Dep. Ex. 19), which amount was reduced by Contra to $1,395,000.

Contrary to Plaintiff's allegations, the evidence reveals that the expectation for Plaintiff's performance in 2002, like the expectation for the performance of the similarly situated white account managers, was based upon Plaintiff's prior performance and territory. Plaintiff can offer no evidence of any improper motive or conduct by Hobsons exerted in an effort to prevent Plaintiff from reaching his sales target. To the contrary, the evidence reveals that Contra worked with Plaintiff in numerous one-on-one sessions to assist him in reaching his sales targets. (Contra Dep. 106.)

Finally, and most glaringly, Plaintiff ignores the evidence asserted by Hobsons that Plaintiff's sales manager, Benjamin Contra, Jr., had previously terminated three white account managers following similar notice that their performances were deficient. (Motion for Summary Judgment of Defendant Hobsons, Inc., p. 7.) Plaintiff's failure to present affirmative evidence in response prevents Plaintiff from establishing that he was treated more harshly than similarly situated white employees and entitles Hobsons' to summary judgment.

Plaintiff's remaining assertions, which are neither supported by the evidence nor relevant to Plaintiff's claim of race discrimination, are merely a distraction from the evidence that Plaintiff was terminated for his sales performance. Plaintiff asserts that he was treated differently than similarly situated white employees in that he received a letter from Contra dated January 9, 2002 in which Contra set forth his disappointment in Plaintiff's sales performance and in which Contra set forth ten goals for Plaintiff to meet in an effort to improve Plaintiff's sales performance. (Contra Dep. Ex. 4.) Among these goals, was the expectation that Plaintiff would make 50 phone calls daily and ten appointments per month. (Memorandum in Opposition, p. 14.) Contrary to Plaintiff's assertion,

these goals were the same for the similarly situated white account managers.[7]  Further, the uncontested deposition testimony reveals that Contra had presented similar memos to other sales persons. (Contra Dep. 92.)

In any event, even if Plaintiff could offer evidence that these goals were not the same for the similarly situated white account managers, such evidence would be irrelevant.  The ten goals listed by Contra, including phone calls and appointments, are only tools designed to assist the account managers in reaching their sales goals.  Had Plaintiff been performing, Contra would not have needed to remind Plaintiff of these tools and to require him to utilize them.  It was not Plaintiff's failure to meet any one of these ten requirements that resulted in his termination, but his poor sales performance.  There is abundant testimony that the account managers were judged on their sales performances.  (Hanisian Dep. 14; Surrey Dep. 36; Contra 25.)  Plaintiff's failure to perform, even with the assistance of Contra and the tools of selling, resulted in his termination.

Plaintiff next argues that he was treated more harshly than white employees based upon written warnings regarding his personal use of the company cell phone and the company credit card. (Memorandum in Opposition, p. 4.)  Contrary to Plaintiff's allegations, Gina Sorg, the Human Resources Manager, testified that she had contacted several white employees regarding their abuse of cell phones to make personal calls and placed written warnings into the files of these persons.

---

[7] The uncontested evidence reveals that white Account Manager Surrey had been given a daily phone call goal of 60-65 and that he had been singled out by Contra at sales meetings for his failure to meet this goal.  (Surrey Dep. 17, 19-20, 29.)  Surrey was also given the goal of 15 face to face appointments monthly.  (Cotnra Dep. Ex. 16.)  Account Manager Hanisian was given a goal of 50 daily phone calls and 15 face-to-face appointments.  (Contra. Ex. 17.)  Account manager Zahumensky was given a goal of 40-50 phone calls daily and a minimum of 15 client meetings per month.  Contra also criticized Zahumensky in sales meetings for his failure to reach his phone call goal.  (Zahumensky Dep. 21, 37-39.)

(Sorg Dep. 15-16.) With respect to the company credit card, Gina Sorg testified that she had given written warnings to at least two white employees for this same reason and that she had gone to the extreme of removing the company credit card from white employee Marty Korse because of his excessive use of the card. (Sorg Dep. 17-18.)

In any event, Plaintiff's argument that these warnings are evidence of race discrimination is belied by the fact that both warnings preceded the nomination of Plaintiff as Salesperson of the Year for the year ending September 2001, as well as Contra's September 27, 2001 letter to Plaintiff praising Plaintiff's sales performance and advising Plaintiff of his raise for the following year. (Contra Dep. Ex. 10.)

Plaintiff alleges that "[e]ven before he was hired, Wright received closer scrutiny from Hobsons than did his white counterparts." Plaintiff bases this allegation on the fact that Account Managers Zahumensky and Surrey were hired after only being interviewed by one person. (Memorandum in Opposition, p. 2.) Plaintiff ignores the evidence that white Account Manager Hanisian was subjected to four interviews, including one with Sean Grant, prior to being hired. (Hanisian Dep. 51.) Additionally, Human Resources Manager Gina Sorg testified that the normal number of interviews for a candidate was 2-3. (Sorg Dep. 25.)

Finally, desperate for some evidence of discrimination, Plaintiff deliberately misrepresents the deposition testimony of Benjamin Contra, Jr. Plaintiff alleges that "Contra took white members of the CORE TEAM golfing, but never extended an invitation to Wright." (Memorandum in Opposition, p. 4.) The testimony cited by Plaintiff actually appears as follows:

>    Q. Did you ever play golf with Sean Grant [President of Hobsons]?
>    A. Yes.
>    Q. Do you recall how many times?

> A. It was two–I better answer "no" because –
> Q. You're not sure how many?
> A. No, no.
> Q. Do you recall more than one?
> A. Yes.
> Q. At any of the times that you do recall, was the foursome made up completely of Hobsons' employees?
> A. Yes.
> Q. Was Mr. Wright ever involved in a golf outing with you and Mr. Grant, that you can recall?
> A. No.

(Contra Dep. 149:1-14.) The evidence does not reveal that Contra went golfing with any member of the Core Sales Product Team much less that he took all of the members except for Plaintiff.

Plaintiff can offer no evidence to support his allegations that he received "harsher treatment on account of his race;" therefore, he cannot establish the fourth element of his *prima facie case*. "[M]ere membership in a protected class does not create a viable discrimination claim, ...." <u>Norbuta v. Loctite Corporation</u>, 1 Fed.Appx. 305, 315, 2001 WL 45114 (6th Cir. 2001) (a copy is attached to Hobsons' Motion for Summary Judgment). Rumors, conclusory allegations and subjective beliefs "are wholly insufficient evidence to establish a claim of discrimination as a matter of law." <u>Mitchell v. Toledo Hosp.</u>, 964 F.2d 577, 585 (6th Cir. 1992). For this reason, Hobsons is entitled to summary judgment on Plaintiff's Title VII claim.

      **c) Plaintiff cannot provide the additional evidence necessary to establish his *prima facie* case in a reduction in force situation.**

It is Plaintiff and not Hobsons which alleges that Plaintiff was terminated as part of a reduction in force. (Complaint, para. 18.) When a plaintiff "is terminated as part of a RIF, the elements of a *prima facie* case are modified to require a heightened proffer of evidence. Although the first three prongs of the test remain the same, to meet the fourth prong a plaintiff must submit

'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" (Citations omitted.) Norbuta, 1 Fed. Appx. at 312. As Plaintiff has failed to offer any such "additional" evidence, Plaintiff cannot prevail on any claim that his termination as part of any reduction in force was discriminatory.

**B. Hobsons Has Articulated a Legitimate, Nondiscriminatory Reason for Plaintiff's Termination.**

Hobsons has offered uncontested evidence that Plaintiff's performance in the first four months of the fiscal year ending 2002 was poor when compared to the performance of similarly situated white account managers, when compared to his prior year's performance, when compared to the expectations of both Plaintiff and Hobsons, and when compared to the expectations of his territory. Plaintiff has offered no evidence that Hobsons was responsible for his poor performance or that Hobsons failed to assist Plaintiff in an attempt to improve his performance. Hobsons has meet its burden of production to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination.

**C. Plaintiff Cannot Establish that Hobsons' Legitimate Reason Is Pretext for Unlawful Race Discrimination.**

Plaintiff bases his argument that Hobsons' legitimate reason is pretextual on his claim that "[e]vidence abounds that the reasons articulated by Hobsons for Wright's termination were insufficient to motivate termination." (Memorandum in Opposition, p. 17.) In support of this argument, Plaintiff repeats his summary conclusions that Plaintiff's performance exceeded that of "his white peers" who experienced sales slumps worse than Plaintiffs. As set forth above, Plaintiff has offered no affirmative evidence to contradict the evidence offered by Hobsons that Plaintiff's performance in the first four months of fiscal year 2002 was poor, that it did not exceed that of

similarly situated white account managers, and that these account managers did not suffer from subsequent slumps worse than Plaintiffs.

"In analyzing a discrimination claim, the Court is not looking to pass judgment on the soundness of an employer's business decision." Brune, 41 F.Supp.2d at 774. Although it is Plaintiff's opinion that his performance in fiscal year ending 2001 should have served to insure his continued employment regardless of his subsequent performance, such was not the business judgment of Hobsons. The evidence reveals that the expectation of continuing performance was recognized and applied to all similarly situated white account managers if they wanted to retain their positions. (Hanisian Dep. 35; Surrey Dep. 42; Zahumensky Dep. 30.)

**D. This Situation Is Precisely One Wherein the Same-Actor Inference Should Be Applied.**

Plaintiff argues that the same-actor inference is inappropriate in this case because Contra "was not the only person involved in hiring him." (Memorandum in Opposition, p. 18.) Plaintiff offers no evidence in the record to support this allegation. Even if it is true, it is not a bar to the application of the same actor inference. In Wofford v. Middletown Tube Works, Inc., 2003 WL 21321186*6 (6th Cir. June 5, 2003)(a copy is attached to Hobsons' Motion for Summary Judgment), the Sixth Circuit held that "[u]nder the 'same-actor inference' employed in discrimination cases, the fact that the same person or group of people did both the hiring and firing over a short time frame is strong evidence that there was no discrimination involved in the later termination." (Emphasis added.)

Plaintiff then argues that the inference is not applicable as there were "two years between Wright's hiring and discharge." (Memorandum in Opposition, p. 18.) In Buhrmaster v. Overnite Transportation Company, 61 F.3d 461, 464 (6th Cir. 1995), the Sixth Circuit noted that "[o]ver the

years, an individual may develop an animus towards a class of people that did not exist when the hiring decision was made." The court went on to hold:

> In discrimination cases where the employee's class does not change, it remains possible that an employer who has nothing against women *per se* when it hires a certain female will have nothing against women *per se* when it fires that female, regardless of the number of years that pass. Thus, <u>a short period of time is not an essential element of the same actor inference, at least in cases where the plaintiff's class does not change.</u> (Emphasis added.)

Id. As Plaintiff's class did not change from the time that Contra hired him until the time that he fired him, the same-actor inference is appropriate. Finally, Plaintiff argues that Contra demonstrated "that he gave Wright closer scrutiny than he gave to his white salespersons." (Memorandum in Opposition, p. 18.) As this argument is without evidentiary support it can be rejected out of hand.

The same-actor inference is particularly appropriate in this case based upon the special treatment given to Plaintiff by Contra during his two years of employment. It is uncontested that, pursuant to Plaintiff's request, Contra authorized the breaking out of Plaintiff's car allowance from his salary in spite of the elimination of such a policy company wide. (Contra Dep. Ex. 10.) It is further uncontested that Plaintiff was the highest paid account manager of those similarly situated within the Core Product Sales Team. (Contra Dep. Ex. 10; Affidavit of Winhusen, para. 6.) It is uncontested that Plaintiff was given the richest territory. (Contra Dep. Ex. 10.) The evidence that Contra both hired and fired Plaintiff, as well as the evidence of his special treatment of Plaintiff, is strong evidence that there was no discrimination in Plaintiff's termination.

**E. Plaintiff Cannot Establish the Elements Essential to Prevail Upon His Claim For Unlawful Race Discrimination in Employment Pursuant to 42 U.S.C. §1981.**

Plaintiff fails to respond to Hobsons' argument that Plaintiff cannot prevail on his §1981 claim based on the fact that Plaintiff did not have an employment contract. (Motion for Summary

Judgment, pp. 24-26.)   Although, Plaintiff alleges, in support of another argument, that he "contracted to receive a combination salary and commission as compensation for [his] sales efforts," (Memorandum in Opposition, p. 3), the evidence in the form of the confirmation/offer letter from Contra dated December 21, 1999 reveals that Plaintiff did not have a contract, but that he was an employee-at-will.  Based upon Plaintiff's failure to "present affirmative evidence in order to defeat a properly supported motion for summary judgment," Hobsons is entitled to summary judgment on this claim.  Brune, 41 F.Supp.2d at 770.

**F.  Plaintiff's State Law Claims Should Be Dismissed.**

Based upon the dismissal of Plaintiff's federal law claims, his remaining state law claims under Ohio Rev. Code §4112, for wrongful termination in contravention of Ohio public policy, and for breach of contract should be dismissed.  Brandenburg v. Housing Authority of Irvine, 253 F.3d 891, 900 (6th Cir. 2001).

**G.  Plaintiff Cannot Prevail Upon His Claims Under O.R.C. §4112 and for Wrongful Termination in Contravention of Ohio Public Policy.**

Based upon Plaintiff's failure to establish the essential elements of his Title VII claim, he cannot prevail upon his claim arising under Ohio Rev. Code §4112 or his claim for wrongful termination in contravention of Ohio's public policy. (Motion for Summary Judgment, pp. 26-27.)

**H. Plaintiff Cannot Offer the Evidence Necessary to Prevail on His Breach of Contract Claim.**

Plaintiff alleges that he was "the procuring cause" of a sale to Arcadia. (Memorandum in Opposition, p. 1.)  Plaintiff further alleges that a sale to Arcadia closed within 60 days entitling Plaintiff to commission that he was not paid. (Memorandum in Opposition, p. 19-20.)  Plaintiff, however, fails to support any of these allegations with any evidence whatsoever.  Plaintiff fails to

produce evidence of a sale to Arcadia, evidence that he was "the procuring cause," evidence that any sale to Arcadia closed within 60 days or evidence that the amount he claims to be owed was not paid to him.

Hobsons asserts that Plaintiff was paid all commission that he was owed. (Motion for Summary Judgment, p. 27-29.) Plaintiff fails to "set forth specific facts showing there is a genuine issue for trial," Brune, 41 F.Supp.2d at 770, in that he fails to produce any evidence of an amount owed and not paid to him. Plaintiff testified that he was not certain whether or not he had been paid any compensation he was due on the Arcadia deal. (Wright Dep. 71:10-72:1) Plaintiff's failure to set forth specific facts showing there is a genuine issue as to whether he was paid all amounts due him, particularly as he will bear the burden of establishing this element of his claim at trial, entitles Hobsons to summary judgment on this claim.

III. CONCLUSION

For these reasons, as well as those set forth in the Motion for Summary Judgment, Hobsons' Motion for Summary Judgment should be granted.

    s/ Michael E. Maundrell
Michael E. Maundrell
Ohio Bar Number: 0027110
Attorney for Defendant Hobsons, Inc.
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
11935 Mason Road, Suite 110
Cincinnati, OH 45249
(513) 583-4205
(513) 583-4203 [fax]
Email: mmaundrell@schroederlaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on **September 17, 2003**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to the following: Peter Burr, Esq., **Attorney for Plaintiff**.

                                          s/ Michael E. Maundrell
                                    Michael E. Maundrell
                                    Ohio Bar Number: 0027110
                                    Attorney for Defendant Hobsons, Inc.
                                    SCHROEDER, MAUNDRELL, BARBIERE & POWERS
                                    11935 Mason Road, Suite 110
                                    Cincinnati, OH 45249
                                    (513) 583-4205
                                    (513) 583-4203 [fax]
                                    Email: mmaundrell@schroederlaw.com